UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES L. WILSON                                                                                PLAINTIFF

v.                                                                  CIVIL ACTION NO. 3:15-CV-00039-DW

THE COMMISSIONER OF SOCIAL SECURITY                     DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff James L. Wilson has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain judicial review of a final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits (DIB) and supplemental security income (SSI). Wilson applied for DIB and SSI on January 12, 2012, alleging that he was disabled as of Nov. 19, 2011, due to low blood pressure, bipolar disorder, anxiety, paranoia, sleep apnea and chronic fatigue (Tr. 90-91, 124-125, 251). The Commissioner denied Wilson's claims on initial consideration (Tr. 90-91, 92-107, 108-123) and on reconsideration (Tr. 124-125, 126-142, 143-159). Wilson requested a hearing before an Administrative Law Judge (ALJ) (Tr. 182-183).

ALJ Michael J. Nichols conducted a hearing in Louisville, Kentucky, on May 13, 2014 (Tr. 36-58). Wilson attended with his attorney, Mary Bower (Tr. 36). Wilson and vocational expert (VE) Tina Stambaugh testified at the hearing (Tr. 38-53, 54-58). Following the conclusion of the hearing, ALJ Nichols entered a hearing decision on July 17, 2014, that found Wilson is not disabled for the purposes of the Social Security Act (Tr. 20-31).

In his adverse decision, ALJ Nichols made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through Dec. 31, 2013.

2.      The claimant has not engaged in substantial gainful activity since Nov. 19, 2011, the alleged onset date (20 C.F.R. 404.1571, *et seq.* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: polysubstance dependence in remission by report, bipolar disorder, depressive disorder, and personality disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I found that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple tasks that are not fast-paced or quota-driven; he should have no interaction with the general public; and he should have no more than occasional interaction with co-workers.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on April 21, 1976, and was 35-years-old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high-school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. Part 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from Nov. 19, 2011, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 22-30). Wilson sought review of the hearing decision by the Appeals Council (Tr. 14-16).

The Appeals Council denied his request for review, finding no reason under the Rules to review ALJ Nichols' decision (Tr. 1-6). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505, 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if

the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3) The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528

(6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.).  Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*).  It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000).  So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion.  *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**The Material Facts.**

At the time of the administrative hearing, Plaintiff James L. Wilson was 38 years old (Tr. 39).  He stood 6'1" tall and weighed 205 lbs (Tr. 46).  Wilson, a single, African-American male with no children, was born in Bowling Green, Kentucky (Tr. 359-360).  He is one of four

5

siblings raised by their mother (Tr. 359). He graduated from high school with a C-grade average and obtained a 2-year associate degree from Mackey Brown College in pharmacy technology (Tr. 51-53, 359) although he never obtained employment at a pharmacy (Tr. 53).

Wilson testified at the May 13, 2014 hearing before Judge Nichols that his previous employment included work operating an ingredient mixing machine for a salad dressing manufacturer for several years from 2006 to 2008 (Tr. 39-40). He also worked at a roller bearing factory as a heat treatment machine operator for approximately one year heating and gauging bearings (Tr. 41-42, 230). Other than these two jobs, Wilson performed only short-term, part-time work for an employment service with his final job being a package handler at UPS for approximately two weeks (Tr. 42, 230).

Wilson explained that he has had difficulty obtaining and keeping jobs due to his bipolar disorder. His episodes of manic and depressive behavior "keep [him] from holding a job." (Tr. 42). Wilson has been treated for his psychological problems (bipolar disorder, depression and anxiety) at Communicare by nurse practitioner Nancy Williams and therapist Nick Waters since November of 2011 (Tr. 313-329, 332-357, 363-369, 370-399, 400-407). Nurse practitioner Williams completed a medical assessment of Wilson's ability to do work-related activities (mental). In her assessment, Williams concluded that he had poor or no ability to: make occupational adjustments; performance adjustments; or, personal-social adjustments due to his depression, mood disorder, anxiety, manic episodes and suicidal tendencies (Tr. 330-331).

Review of the medical record reveals that Wilson was admitted to Hardin Memorial Hospital in February of 2011, for three days with complaints of depression and suicidal ideation (Tr. 306-312). Blood test results on admission confirmed the use of amphetamines, marijuana and tricyclics (Tr. 306). Wilson was diagnosed with polysubstance dependence, depression and

6

personality disorder (Id.). On admission he reported prior outpatient mental health treatment at the University of Louisville and Communicare along with medication of Seroquel, Lithium and Benadryl. He denied any psychiatric inpatient treatment or history of suicide attempts (Tr. 308).

The impression of treating physician Dr. Amy Trivett, based on her observations of Wilson's behavior and his statements, was that he "appear[ed] … [to] be seeking admission to support his [prior] application to appeal denial of Social Security benefits." (Tr. 309). Dr. Trivett added that despite Wilson's complaints of recent depression he had reported complete resolution of his symptoms and did not appear to be clinically depressed. (Id.). She considered his symptoms to be more likely substance induced or secondary to a character pathology versus malingering. (Id.).

Wilson's only other hospitalization of record also was at Hardin Memorial Hospital in February of 2014, when he complained of right upper quadrant pain (Tr. 409-410). Following a diagnostic laparoscopy Wilson was determined to have cholelithiasis, which manifested in multiple cholesterol gallstones that were removed along with his gallbladder in a cholecystectomy (Id.). Otherwise, his medical record reveals no severe physical impairments or history of treatment for severe physical impairments. The consultative examination report of licensed clinical psychologist Greg Lynch (Tr. 358-362) reveals only a history of sleep apnea (Tr. 360).

Dr. Lynch performed a consultative psychological examination of Wilson on May 30, 2013 (Tr. 359-362). As noted, he found no reported physical medical problems other than sleep apnea and no recent, overnight hospitalizations (Tr. 360). Wilson reported that he currently received mental health treatment from Communicare Mental Health Center for severe depression

7

and bipolar disorder treated with Seroquel and Lithium for two years. (Id.). Wilson agreed that the two medications were beneficial in treating his symptoms. (Id.).

Mental status examination revealed Wilson to be fully oriented with normal recall and memory as well as normal eye contact (Tr. 361). He did exhibit, however, restricted affect and depressed mood and reported racing thoughts, anger outbursts and risky behaviors. (Id.). His though content was noted to be appropriate and thought organization was goal directed. (Id.). Wilson exhibited an average fund of knowledge with an average intelligence although with fair-to-poor judgment and inconsistent insight. (Id.).

Dr. Lynch's diagnostic impression was mood disorder with a current GAF of 53. Lynch found Wilson to be slightly limited in his ability to understand, remember and carry out instructions as well as his ability to sustain attention and concentration toward the performance of simple repetitive tasks (Tr. 362). Dr. Lynch found Wilson to be moderately limited in his ability to tolerate stress and pressures of day-to-day employment and his ability to respond appropriately to supervision, co-workers and work pressures in a work setting. (Id.). He concluded that Wilson's prognosis was fair with appropriate mental health intervention. (Id.).

**Issues Presented.**

In his fact and law summary,[1] Wilson takes issue with findings of fact 5, 10 and 11 of ALJ Nichols' hearing decision (Tr. 20-31). Finding of fact 5 is found at pp. 6-10 of the hearing decision (Tr. 25-29). ALJ Nichols determined in this finding that Wilson has the residual functional capacity to perform a full range of work at all exertional levels, but with non-exertional limitations to simple tasks that are not fast paced, no interaction with the general public and no more than occasional interaction with co-workers (Tr. 25). In finding of fact no.

---
[1] DN 12.

10, ALJ Nichols found, based on the testimony of VE Tina Stambaugh, that Wilson remains capable of performing alternative work that exists in significant numbers in the national economy in jobs such as kitchen helper, dishwasher and laundry worker (Tr. 29-20, 54-56). Finding of fact no.11 is the ultimate conclusion that Wilson has not been under a disability from Nov. 19, 2011, through the date of ALJ Nichols' hearing decision entered on July 17, 2014 (Tr. 30-31).

      Wilson in his argument involving finding no. 5 focuses on the medical assessment of his ability to do work related mental activities prepared by nurse practitioner Williams (Tr. 330-331). Wilson correctly points out that treating his nurse practitioner found that he had poor or no ability to perform occupational adjustments and that he would never be gainfully employed due to his severe depression, mood disorder, mania, anxiety, and suicidal tendencies (Tr. 330). Wilson now insists that ALJ Nichols failed to properly consider this evidence in light of his lengthy history of manic depression as documented by the treatment records from Communicare. These records reflect his admission to an acute care unit at Communicare in mid-August of 2013, for increased depression that included crying, isolation, fatigue, irritability, anxiety and sleep irregularities which Wilson reported during the hearing prevented him from retaining employment (Tr. 367). His same mental impairments also were noted to cause him difficulty with activities of daily living and resulted in a reoccurring GAF score of 45, which indicates significant limitations in functioning.

      Wilson also maintains that the ALJ erred in relying upon a portion of Wilson's testimony that he believed he would be able to sustain employment with appropriate medication for his mental impairments (Tr. 45). Wilson maintains that the ALJ ignored the remainder of Wilson's hearing testimony in which he added that, although he is physically able to do certain jobs, when

his depression "hits," he will not report to work which results in repeated job loss (Tr. 57). Wilson therefore believes that ALJ Nichols failed to consider his hearing testimony as a whole.

Finally, Wilson focuses on his history of low GAF scores.  He protests that ALJ Nichols declined to give consideration to these GAF scores, which he maintains show the severity of his symptoms and his limited level of functioning given his reoccurring GAF rating of 45, which reflects serious symptoms of serious impairment in social, occupational or school functioning. *See, Diagnostic and Statistical Manual of Mental Disorders*, p. 32 (4th Edition 2000) (DSM-IV).

Wilson next challenges finding of fact no. 10, which he argues is not supported by substantial evidence.  Although the vocational expert identified alternative work that he allegedly remains capable of performing, Wilson maintains that the hypothetical question submitted to the VE by ALJ Nichols did not accurately portray his mental limitations.  In this respect, he relies upon the same arguments he raises in opposition to finding of fact no. 5.  Wilson insists that the administrative record reflects greater mental limitations than those assessed by the ALJ, so much so, that he is not capable of performing alternative substantial gainful activity.

The Commissioner has filed a fact and law summary in opposition to Wilson's arguments.[2]  Her position is that the RFC finding of fact no. 5 is supported by substantial evidence that includes Wilson's own testimony that his mental condition has improved along with repeated mental status examinations at Communicare that confirm him to be alert and oriented with appropriate judgment and normal attention, concentration, memory and though control (Tr. 332-357, 370-407).

In addition, the consultative psychological examination results, according to the Commissioner, reveal Wilson to have only slight limitations in his attention and concentration and his ability to understand, remember and carry out simple instructions (Tr. 359-362).

---

[2] DN 17.

Because the opinion of Dr. Lynch was found to be supported by the Plaintiff's mental health treatment records, the ALJ properly placed great weight upon it, rather than the opinion of nurse practitioner Williams, which deserved little weight due to the extreme nature of the limitations she found.  These limitations were unsupported by the clinical findings and inconsistent with nurse Williams' own treatment notes according to the Commissioner.  Those notes described Wilson's mental condition as being stable and his mental status examinations normal (Tr. 28, 332-357, 370-407).

      The Commissioner also addressed the refusal of ALJ Nichols to give substantial weight to Wilson's global assessment of functioning (GAF) scores.  On this point, the Commissioner maintains that no requirements exist under the Social Security regulations to give any specific weight to GAF scores in the determination of a claimant's RFC.  Consequently, the refusal of ALJ Nichols to do so did not undermine his RFC determination.  Because his RFC determination in finding of fact no. 5 is supported by substantial evidence, the Commissioner concludes that Wilson's arguments to the contrary must be rejected.

      The Commissioner argues that the testimony of VE Stambaugh fully supports the determination of ALJ Nichols in finding of fact no. 10 that Wilson remains capable of performing alternative work in such jobs as kitchen helper, laundry worker and janitor (Tr. 25, 54-55).  The Commissioner reasons that Wilson's challenge to finding 10 relies exclusively on the very same arguments he raised with respect to the RFC finding.  In other words, Wilson merely renews his claim that the non-exertional limitations arising from his mental impairments are more severe than the limitations imposed by ALJ Nichols.  For the same reasons that the Commissioner previously rejected this argument, she maintains that the limitations contained in the hypothetical question given to the VE accurately portray Wilson's residual functional

capacity. Consequently, the response of the VE during the hearing constitutes substantial evidence at step 5 of the sequential evaluation process to support the determination of the ALJ in finding of fact no. 10.

**Residual Functional Capacity.**

Residual functional capacity is defined by regulation as being "the most you can still do despite your limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). *See Luteyn v. Comm'r of Soc. Sec.*, 528 F. Supp.2d 739, 750 (W.D. Mich. 2007) ("RFC is the most, not the least, a claimant can do despite his impairments."). The Commissioner is required by regulation to assess a claimant's RFC "based on all the relevant evidence in [the claimant's] … record." Id. See *Bingham v. Comm'r*, 186 Fed. Appx. 624, 647-48 (6th Cir. 2006) ("The ALJ is ultimately responsible for determining a claimant's RFC based upon relevant medical and other evidence of record.").

In assessing a claimant's residual functional capacity, the Commissioner will consider all of his or her medically determinable impairments including both severe and non-severe impairments. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). *See Reynolds v. Comm'r*, 424 Fed. Appx. 411, 417-18 (6th Cir. 2011) ("It is true that an ALJ must determine a claimant's residual functional capacity, considering 'numerous factors' including 'medical evidence, non-medical evidence, and the claimant's credibility.'") (quoting *Coldiron v. Comm'r*, 391 Fed. Appx. 435, 443 (6th Cir. 2010)). *See also*, SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996).

It is the responsibility of the claimant to provide the evidence that the Commissioner will evaluate in making the RFC finding. *See* 20 C.F.R. §§404.1512(c), 416.912(c). The Commissioner also will consider any statements of the claimant provided by medical sources

about what he or she remains able to do, as well as any descriptions or observations of the claimant's limitations caused by his or her impairments that are provided by the claimant, the claimant's family, friends or other persons. 20 C.F.R. §§405.1545(a)(3), 416.945(a)(3).

A finding of residual functional capacity is used at step 4 of the sequential evaluation process first to determine whether the claimant remains capable of performing his or her past relevant work. See 20 C.F.R. §§404.1520(f), 404.1560(b), 416.920(f) and 416.960(b). If the Commissioner determines that a claimant is not able to perform his or her past relevant work, or does not have past relevant work, then the RFC determination is used at step 5 of the sequential evaluation process to determine whether the claimant can adjust to any other work that exists in the national economy. See 20 C.F.R. §404.1520(g), 404.1566, 416.920(g) and 416.966.

In this respect, the RFC assessment is used along with information concerning the claimant's vocational background in making the disability determination. Id. It is Wilson's responsibility as claimant to provide the evidence that the Commissioner evaluates to determine his RFC. See 20 C.F.R. §§404.1512(c), 416.912(c). *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) ("While the claimant bears the burden of proof during the first four steps [of the sequential evaluation process], that burden shifts to the Commissioner at step 5."); *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999) (claimant bears the burden to provide the evidence for the RFC calculation). Wilson did not meet this burden.

First, ALJ Nichols did not err in declining to place controlling or great weight on the opinion of nurse practitioner Williams in her medical assessment of Wilson's ability to do work-related mental activities (Tr. 330-331). ALJ Nichols' decision at p. 9 of his hearing decision to give little weight to nurse Williams' opinion that Wilson had poor ability to make

13

occupational adjustments, performance adjustments or personal-social adjustments was supported by substantial evidence and the law that relates to the treating medical source rule.

A nurse practitioner is not considered under 20 C.F.R. §404.1513(a) to be a treating source such as a licensed physician, licensed psychologist, optometrist, podiatrist or qualified speech-language pathologist. See 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(d)(1). *See Barnes v. Astrue*, Case No. 5:08CV-298-RS-MD, 2009 WL 3067066 at *8 (N.D. Fla. Sept. 22, 2009) ("An ARPN is not considered an acceptable source, 20 C.F.R. §404.1513, and their opinion is not entitled to the weight afforded to a treating physician.") At most, Williams is considered to be an "other medical source" under the Regulations. See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

Under the medical source or treating physician rule, the Commissioner's regulations require that the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2). *See, Cole v. Astrue*, 661 F.3d 931, 937-39 (6th Cir. 2011) (discussing the treating physician rule). A physician will qualify as a treating source if the claimant sees the doctor "with a frequency consistent with accepted medical practice for the type of treatment/evaluation required for the medical condition." *Smith v. Comm'r of Soc. Security*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502).

The treating physician rule rests on the assumption that a medical professional who has dealt with a claimant over a long period of time for a specific illness will have a deeper insight into the medical condition of the claimant than an individual who may have examined the claimant only once or has merely seen the medical records of the claimant. *Barker v. Shalala*, 40

F.3d 789, 794 (6th Cir. 1994) (citing *Bowman v. Heckler*, 70 F.2d 564, 568 (5th Cir. 1983)). The opinion of a treating source need not be given complete deference, however, if that opinion lacks objective support in the record, is in tension with a prior opinion of the same treating source, lacks meaningful detail, is entirely conclusory, or is in conflict with other evidence of record showing substantial improvement in the claimant's condition. *See, White v. Comm'r*, 572 F.3d 272, 285-87 (6th Cir. 2009); *Calvert v. Firstar Financial, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005); *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y*, 25 F.3d 284 (6th Cir. 1994).

Even in those circumstances in which the Commissioner does not give the opinion of a treating physician controlling weight, it may still be given great weight. *White,* 572 F.3d at 286 (citing SSR 96-2p). When an ALJ declines to give controlling weight to the opinion of a treating source, the ALJ must balance a number of factors to evaluate what weight the opinion should be given. *Wilson*, 378 F.3d at 544. These factors include the length of the treatment relationship, frequency of examination, the nature and extent of the treatment provided, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Cole,* 661 F.3d at 937 (citing 20 C.F.R. §404.1527(d)(2)).

As to the importance of these factors when determining the weight to be given the opinion of a treating source, *Cole* explains:

> [T]he Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion 20 C.F.R. §404.1527(d)(2). Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. S.S.R. 96-2p (1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended 'to let claimant's understand the disposition of their cases, particularly in situations where a claimant

15

> knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that ... he is not." *Wilson,* 378 F.3d at 544.

*Cole,* 661 F.3d at 937-38.

When an ALJ fails to conduct a balancing of the above factors to determine the weight that should be awarded to a treating source opinion, such as occurred in *Cole,* the Sixth Circuit has made clear that it does not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole,* 661 F.3d at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson,* 378 F.3d at 545)).

Here, ALJ Nichols gave abundant "good reasons" to reject the opinion of nurse practitioner Williams, who as noted, is not considered to be a treating medical source. ALJ Nichols properly noted the conclusory nature of Williams' opinion, which was nothing more than a checklist. Nurse Williams concluded, without any substantial explanation, that Wilson had virtually no ability to make any type of adjustments – occupational, performance or personal-social. Yet, Nurse Williams provided no discussion of Wilson's symptoms, treating history or past behavior in her medical assessment (Tr. 330-331). All that she did was to merely provide a diagnosis list of Wilson's mental impairments without any further elaboration whatsoever.

Her conclusion that Wilson "is permanently and totally disabled and will never be gainfully employed…" is not entitled to any weight as it is a legal conclusion that is exclusively reserved to the Commissioner. (Tr. 331). See 20 C.F.R. §404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine

16

that you are disabled."). *See, Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (no special significance will be given to opinions that a claimant is disabled even if they come from a treating physician). Such an opinion is merely a legal conclusion that falls within the exclusive purview of the Commissioner. *Stanley v. Sec'y*, 39 F.3d 115, 118 (6th Cir. 1984) (The Secretary [now Commissioner] may properly reject a treating physician's unexplained opinion that a claimant is disabled); *Casey v. Sullivan*, 987 F.2d 1230, 1234-35 (6th Cir. 1993) (the opinion of a treating physician that a claimant is unemployable is not the equivalent of a determination of disability). Accordingly, nurse Williams' conclusion to this effect was entitled to no weight by ALJ Nichols.

ALJ Nichols also correctly noted that the extreme limitations imposed by nurse Williams in the medical assessment failed to take into consideration Wilson's response to treatment at Communicare. The Communicare treatment notes repeatedly reflect that he was stable, with normal psychiatric/Neuro examination and responded well to his medication, a conclusion that Wilson himself pointed out during the hearing before ALJ Nichols. (Tr. 42, 44-45, 315-316, 317, 321, 324, 329, 334, 342-43, 348, 350-51, 352, 365, 373-74, 389-90, 392, 398-99, 400, 476-77, 484-85). The absence of any substantial hospitalization of a continuing nature for Wilson's mental impairments likewise stands in stark contrast to the extreme limitations suggested by the nurse practitioner.

Wilson's depressive disorder and bipolar disorder were repeatedly noted in the treatment notes of Communicare to be stable. (Id.). His mental status examinations were routinely characterized as being normal during most of his treatment. (Id.). Wilson was noted to be persistent in pursuing his goals and in recovering from setbacks. He was sufficiently mentally stable to successfully pursue an advanced pharmacy technologist degree at Mackie Brown

College and to successfully complete an externship, as well. Such circumstances amply support ALJ Nichols' rejection of nurse practitioner Williams' medical assessment of Wilson's ability to do work related mental activities (Tr. 28, 330-331).

The Court likewise concludes that ALJ Nichols properly declined to place controlling weight on Wilson's GAF scores in determining his RFC. GAF scores are not held in the Sixth Circuit to be directly correlated to the severity of a claimant's mental impairments. This view is well stated in *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007), wherein the court explained:

> [T]he Commissioner "has declined to endorse the [GAF] score for use in the Social Security and SSI Disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorder listings." *Id*. (citing *Devoard v. Comm'r*, 211 Fed. Appx. 411 (6th Cir. 2006) (quoting *Wind v. Barnett*, 133 Fed. Appx. 684, 691-92 n. 5 (11th Cir. 2005)). The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms or mental functioning.

Kennedy, 247 Fed. Appx. at 766. *See also, Bratton v. Astrue*, 2010 WL 2901856 at *8 (M.D. Tenn. July 19, 2010) ("[T]he Sixth Circuit recognizes that a GAF score is a physician's subjective evaluation and not raw medical data."). *See also, Oliver v. Comm'r*, 415 Fed. Appx. 681, 684 (6th Cir. Mar. 17, 2011) ("A GAF score is thus not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues."). *See* 65 Fed. Reg. 50746, 50764-65 (2000). Because Wilson's treatment history, educational achievement and hearing testimony concerning his ability to work all contradict the GAF scores he now relies upon, the ALJ did not err in refusing to give substantial weight to the same GAF scores.

**Vocational Expert Testimony.**

The final issue is whether the vocational expert testimony of Tina Stambaugh constitutes substantial evidence at step 5 of the sequential evaluation process to support the disability determination of the ALJ. The testimony of a vocational expert may be substantial evidence to support a decision of the ALJ if that testimony is made in response to a hypothetical question that accurately portrays the mental and physical impairments of the claimant. *Ealy,* 594 F.3d at 512-13 (citing *Varley v. Sec'y*, 820 F.2d 777, 779 (6th Cir. 1987)). The hypothetical question to the VE is not required to include a list of the claimant's medical conditions. *Wadd v. Comm'r*, 368 F.3d 629, 632-33 (6th Cir. 2004). The ALJ may present a hypothetical to the VE on the basis of the ALJ's assessment of the claimant's credibility. *Jones v. Comm'r*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Townsend v. Sec'y*, 762 F.2d 40, 44 (6th Cir. 1985)). The hypothetical question need not incorporate those limitations asserted by the claimant that are properly rejected by the ALJ based upon his independent review of the record. *Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001).

Here, the hypothetical question posed by ALJ Nichols during the hearing (Tr. 54-55) accurately included Wilson's non-exertional limitations related to his bipolar disorder and depressive disorder. Wilson's arguments to the contrary once again rely exclusively upon the medical assessment of nurse practitioner Williams, which ALJ Nichols properly found to be contrary to Williams' own treatment notes, Wilson's hearing testimony and his education success as a pharmacy technologist. Because the hypothetical accurately portrayed Wilson's limitations, and VE Stambaugh identified a substantial number of alternative jobs that Wilson remained capable of performing given his age, education, past relevant work and residual functional capacity, the Commissioner carried her burden at step 5 of the sequential evaluation

19

process. The Court therefore shall affirm the decision of the Commissioner and dismiss Wilson's complaint with prejudice by separate final judgment.

Cc: Counsel of Record